**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM HOWARD, | ) | CASE NO. 1:07-cv-3240 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JULIUS C. WILSON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, William Howard ("Howard"), challenges the constitutionality of his conviction in the case of *State v. Howard*, Cuyahoga County Court of Common Pleas Case No. CR-455145. Howard, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 22, 2007, with the United States District Court for the Northern District of Ohio.  On February 28, 2008, Warden Julius C. Wilson ("Respondent") filed his Answer/Return of Writ. (Doc. No. 9.)  Howard filed a Traverse on April 25, 2008.  (Doc. No. 11.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Howard's petition be GRANTED in part and DENIED in part.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Howard's conviction as follows:

> [*P3] Seven persons testified at trial. The first person called on behalf of the State was Shannon Woods. Woods lived across the street from the victim, and while not being personally acquainted with the victim and her husband, the appellant, she nonetheless knew who they were and recognized them on the day in question. Woods testified that she was on her front porch on the second story of her house, when she saw the victim, Angela Howard, exit the house with her children, screaming for help. She also saw appellant leave the house after that; she did not see appellant arrive at the house.
>
> [*P4] Jermaine Mosely testified that he was an acquaintance of Howard and that his employer was Howard's father. He further testified that Howard's father had sent him to Howard's house to protect her from appellant. At the relevant time, there was a temporary protection order in place that prevented appellant from being on the premises. On the day of the incident, Mosely was at Howard's residence with his four-month-old son. He testified that he was in an upstairs bedroom with some of the children when he heard Howard scream. He then turned around and saw appellant coming at him with a knife. Until that precise moment, Mosely was unaware of appellant being in the house. A fight ensued and Mosely chased appellant from the house.
>
> [*P5] Howard testified that, on the day in question, there was a temporary protection order in force. Despite this fact, earlier in the day, she had seen appellant walk through her front gate, but then turn away before walking up the front steps. She opined that this was because appellant saw Mosely in the living room with some of the children. After this incident, Howard called 9-1-1 and was on the phone with the police when she observed appellant ride by her house on his bicycle. She reported this fact to the police dispatcher. She testified that sometime after this incident, she was upstairs sitting on a bed with her son while her two daughters were downstairs. When she looked up, she saw appellant standing in the hallway. She testified that she did not give appellant permission to enter the home.
>
> [*P6] In addition to these witnesses, four police officers testified. None of them were present at the time of the alleged aggravated burglary, and hence could not in any fashion testify as to seeing appellant enter the house. More importantly, they did not testify to anything in their investigation that might have indicated how appellant entered Howard's home. It is upon this glaring lapse that appellant assigns his first error.

*State v. Howard*, 2005 Ohio App. LEXIS 4639, 2005-Ohio-5135 ¶¶3-6 (Ohio Ct. App. Sept. 29, 2005).

## II. Procedural History

### A. Conviction

On August 9, 2004, the Cuyahoga County Grand Jury charged Howard with six counts of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11, one count of felonious assault in violation of O.R.C. § 2903.11, and one count of violating a temporary protection order in violation of O.R.C. § 2919.27. (Doc. No. 9, Exh. 1.)

Howard, represented by counsel, pled "not guilty" and the matter proceeded to jury trial. Prior to charging the jury, the trial court merged the six counts of aggravated burglary into one. Howard was found guilty of all charges as amended.

On October 14, 2004, the trial court sentenced Howard to a term of five years incarceration for aggravated burglary, five years incarceration for felonious assault, and six months incarceration for violating the temporary protection order. (Doc. No. 9, Exh. 3.) The sentences were to be served concurrently. *Id*. The trial court also imposed a five-year term of post-release control. *Id*.

### B. Direct Appeal

Howard, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") asserting the following assignments of error:

1. The trial court erred by not granting Appellant's motion for judgment of acquittal because the State failed to prove that he acted with force, stealth, or deception elements of aggravated burglary.

2. The trial court denied Appellant a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States as well as Article I, Section 10 of the Ohio Constitution.

> 3. Appellant was denied his constitutional right to the effective assistance of counsel at trial.

(Doc. No. 9. Exh. 4.)

On September 29, 2005 the state appellate court sustained Howard's first assignment of error. (Doc. No. 9, Exh. 6.) The court vacated the sentence as to the aggravated burglary conviction and remanded the matter to the trial court "to correct the conviction and sentencing journal entry to reflect the findings of this court." *Id*. Howard's two remaining assignments of error were overruled. *Id*. No appeal from this decision was attempted.

**C.  Trial Court's New Sentence**

In a journal entry dated November 10, 2005, the trial court, following the state appellate court's remand order, corrected the sentencing journal entry by vacating the sentence previously imposed for the burglary conviction. This left intact the concurrent sentences of five years incarceration for the felonious assault conviction and six months incarceration for violating the temporary protection order. (Doc. No. 9, Exh. 7.) The portion of the order imposing five years of post-release control was not changed. *Id*.

Howard was appointed new appellate counsel, but his appeal from his corrected sentence was dismissed *sua sponte* for failing to file the record. (Doc. No. 9, Exhs. 8 & 9.) He subsequently filed a motion for reconsideration which the state appellate court granted. (Doc. No. 9, Exh. 10.) Howard, through counsel, then raised only one assignment of error on appeal: "[t]he trial court erred by holding a resentencing proceeding outside of appellant's presence." (Doc. No. 9, Exh. 11.) On December 16, 2006, the court affirmed the conviction and sentence. (Doc. No. 9, Exh. 13.)

On January 22, 2007, Howard, *pro se*, filed an appeal with the Supreme Court of Ohio

alleging that he was denied effective assistance of appellate counsel and due process when he was resentenced without being present at the hearing. *Id*. On April 18, 2007, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 9, Exh. 16.)

**D.  Application to Reopen Appeal / Postconviction Relief**

The record does not reflect that Howard ever filed an application to reopen his appeal or sought any other post-conviction relief.

**E.  Federal Habeas Petition**

On October 22, 2007, Howard filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
>
> GROUND TWO: When the Court of Appeals affirms the trial court's re-sentencing of Petitioner outside his presence without a knowing and intelligent waiver, Petitioner is denied due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

(Doc. No. 1.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

-5-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts

-6-

defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Ineffective Assistance of Appellate Counsel**

In ground one, Howard alleges he was denied the effective assistance of appellate counsel. (Doc. No. 1.) Specifically, Howard asserts that appellate counsel should have raised a "retroactive misjoinder" claim as well as a challenge to the imposition of a five-year term of post-release control. *Id*.

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

To prove ineffective assistance of appellate counsel, appellant must show deficient performance of appellate counsel that is prejudicial to the defendant under the *Strickland* test. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). Counsel must provide reasonable professional judgment in presenting the appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more

likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel. *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U S 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel). Failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

### 1. Retroactive Misjoinder[1]

First, Howard believes appellate counsel rendered ineffective assistance for failing to raise a "retroactive misjoinder" claim in his second round of appeals. "'Retroactive misjoinder' arises where joinder of multiple counts was proper initially, but later developments -- such as a district

---

[1] Respondent argues that this claim is defaulted because it should have been raised in Howard's first round of direct appeals or in an application to reopen made pursuant to Ohio App. R. 26, neither of which Howard attempted. This Court declines to address the procedural default issue, and will instead proceed to address the merits of Howard's claims. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions -- render the initial joinder improper." *United States v. Jones*, 16 F.3d 487, 493 (2nd Cir. 1994) (*citing* 8 James Wm. Moore, *Moore's Federal Practice* P 8.06[3] (2nd ed. 1993)); *see also United States v. Bennett*, 708 F.2d 728 (6th Cir. 1982).

Howard's argument fails for a multitude of reasons. First, under Ohio Criminal Rule 8, a joinder of offenses is proper where the offenses are "based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." All three of the offenses that Howard was charged with were directly related to Howard's entry into the home of Angela Howard and the events that transpired during this course of conduct. Second, Howard has not argued that he sought a severance of the charges against him pursuant to Ohio Criminal Rule 14, which allows a defendant to seek relief from a prejudicial joinder. Rather, Howard's argument appears to be based on the faulty assumption that, because his conviction for aggravated burglary was reversed, the inclusion of that offense along with the other two charges necessarily resulted in a retroactive misjoinder. To demonstrate retroactive misjoinder, a defendant must show "compelling prejudice." *Jones*, 16 F.3d at 493. Although Howard argues that there was prejudicial spillover, he fails to point to any specific evidence that resulted in prejudice. Howard's case is easily distinguishable from *Jones*. In *Jones*, the prosecution added a felon in possession of weapons charge after the defendant's initial trial resulted in a mistrial. *Id*. Proving a felon in possession charge requires establishing that the defendant was a convicted felon. The court deemed this prejudicial as there was insufficient evidence to support the charge. *Id*. Here, the charge of aggravated burglary did not necessitate the introduction of evidence of prior

convictions. Howard's conviction for burglary was reversed simply because there was insufficient evidence presented concerning the requisite element of entry into the home by force, stealth or deception. *Howard*, 2005-Ohio-5135 at ¶¶7-14. Though testimony was presented to satisfy the remaining elements of aggravated burglary – a trespass in an occupied structure with the purpose of committing a criminal offense – such evidence cannot credibly be characterized as compellingly prejudicial as it relates to his other guilty verdicts. Evidence introduced to demonstrate Howard's unauthorized presence in the house was also necessary to prove a violation of the temporary protection order. Howard has produced no case law - let alone clearly established federal law – that would stand for the proposition he advances. To hold so would require a new trial in virtually every case where any part of a conviction is reversed on sufficiency of the evidence grounds.

Due to the dubious merits of Howard's retroactive misjoinder claim, appellate counsel's failure to raise the issue on appeal did not result in ineffective assistance, as it is highly improbable that inclusion of the issue would have changed the result of the appeal. As such, Howard's retroactive misjoinder claim is without merit.

**2. Post-release Control**

Howard also contends that his counsel was ineffective for failing to challenge the trial court's imposition of a five-year term of post-release control. (Doc. No. 1.) Ohio's post-release control statute reads as follows:

> (B) Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree ... shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. If a court imposes a sentence including a prison term of a type described in this division on or after the effective date of this amendment, the

> failure of a sentencing court to notify the offender pursuant to division (B)(3)(c) of section 2929.19 of the Revised Code of this requirement or to include in the judgment of conviction entered on the journal a statement that the offender's sentence includes this requirement does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under this division.... Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:
>
> (1) For a felony of the first degree or for a felony sex offense, five years;
>
> (2) For a felony of the second degree that is not a felony sex offense, three years;
>
> \*\*\*

O.R.C. § 2967.28(B).

Respondent concedes that the trial court's sentencing entry is incorrect, as Howard is subject to only three years of post-release control under Ohio law for a second degree felony conviction.[2] (Doc. No. 9 at 14.) Further, the Ohio Supreme Court has observed that "[i]t is axiomatic that imposing a sentence outside the statutory range, contrary to the statute, is outside a court's jurisdiction, thereby rendering the sentence void ab initio." *State v. Payne*, 114 Ohio St. 3d 502, 508, 2007-Ohio-4642; 873 N.E.2d 306 at n. 3 (Ohio 2007). Under these circumstances, Howard has satisfied both prongs of the *Strickland* test as concerns claims of

---

[2] Respondent has not argued that this particular ground for relief is procedurally defaulted. The Sixth Circuit has observed that a respondent is "required to assert procedural default as an affirmative defense in its responsive pleading." *Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) ("We agree with the several of our sister circuits that appellate courts should not embrace *sua sponte* raising of procedural default issues as a matter of course."); *accord Hargrove v. Haviland*, 2005 U.S. Dist. LEXIS 11013 (S.D. Ohio June 7, 2005) (finding that the Respondent waived the affirmative defense of procedural default where it was raised for the first time in an objection to a Report and Recommendation.); *see also Oakes v. United States*, 400 F.3d 92, 96 (1st Cir. 2005)("[P]rocedural default is an affirmative defense and ... the government may lose the defense by neglecting to raise it in a response to a habeas petition.") As such, the Court deems any potential defense of procedural default waived with respect to this claim.

ineffective assistance of appellate counsel. Counsel was clearly ineffective for failing to challenge a term of post-release control that is outside the range allowed by statute. Further, inclusion of the issue would have changed the result of the appeal as it is unlikely the state appellate court would have affirmed Howard's void sentence had the error been brought to its attention.

While Respondent also concedes that Howard's appellate counsel may have been ineffective for failing to raise the incorrect term of post-release control on appeal, he asserts that Howard is not entitled to habeas relief because he will not be prejudiced by his appellate counsel's deficient representation. (Doc. No. 9 at 14.) Without citation to any authority, Respondent avers that the Ohio Adult Parole Authority ("APA"), pursuant to internal policy, will impose the correct three-year term of post-release control despite the sentencing court's incorrect entry. *Id*. at 15. Respondent's reliance on *Watkins v. Collins*, 2006-Ohio-5082 at ¶45; 857 N.E.2d 78 111 Ohio St. 3d 425, 432 (Ohio 2006) is inapposite. The *Watkins* Court held that defendants who were not *notified* that their sentence included a term of post-release control should be resentenced. *Watkins*, 2006-Ohio-5082 at ¶45; *see also State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864 (Ohio 2004). In the instant case, however, notice is not at issue, as Howard clearly was properly informed that his sentence was subject to mandatory post-release control. The Court is concerned that the APA has been placed in a position where it will either ignore Ohio statutory law or the trial court's improper sentencing order. Despite Respondent's assurances that the APA will ignore the latter, this Court is unconvinced.

Appellate counsel was ineffective for failing to raise this claim and Howard is entitled to

relief.[3]

**B. Ground Two: Due Process Violation**

In ground two, Howard alleges that he was denied due process of law when the state appellate court affirmed his "resentencing" because it occurred outside his presence and without a knowing and intelligent waiver. (Doc. No. 1.)

The state appellate court found as follows:

> [*P7]  In the instant case, however, we did not mandate a resentencing hearing, the trial court had no power to conduct one, and it did not, in fact, hold one.  What the trial court did do was correct the sentencing journal entry, as consistent with our opinion in *Howard 1*, to reflect vacating a portion of appellant's sentence. Nothing new was imposed.  In the journal entry, the court indicated that the defendant waived his presence, which may have been in error, seemingly because it never happened.  However, his presence was not required. Furthermore, the journal entry stating that appellant was "re-sentenced" is a mischaracterization, as the court had no jurisdiction to resentence appellant.  For these reasons, any error found in the new journal entry is harmless.
>
> [*P8]  The reason we instructed the court to correct the journal entry, rather than hold a new sentencing hearing, is because no new sentence was being imposed. Appellant was originally sentenced to five years for burglary, five years for assault, and six months for violating a protection order, all to run concurrently. Vacating the burglary sentence leaves appellant, practically speaking, in the same situation as before - serving five years in prison.  No "new" sentence was imposed; rather, part of his sentence was taken away, and appellant cites to no authority that affords him the right to be present for this. Compare, *State v. Stevens* (Aug. 2, 1995), Summit App. No. 16998, 1995 Ohio App. LEXIS 3215 (holding that the defendant's Crim.R. 43(A) right to be present was not violated when the court corrected its journal entry via a nun pro tunc to accurately reflect the original sentence imposed because "the trial court did not vacate defendant's sentences and impose new ones").
>
> [*P9]  Accordingly, we find no violation of his rights, and appellant's sole assignment of error is overruled.

---

[3]  "[I]f a court has authority to impose imprisonment, but sentences a defendant to imprisonment for a term in excess of the lawful limit, its judgment is void to the extent of the excess."  *Wilson v. Bell*, 137 F.2d 716, 720 (6th Cir. 1943).

*State v. Howard*, 2006 Ohio 6412 ¶¶7-9, 2006 Ohio App. LEXIS 6374 (Ohio Ct. App. Dec. 7, 2006).

Howard argues that his rights under the Due Process Clause of the Fourteenth Amendment were violated by his exclusion from his "resentencing." "The [United States Supreme] Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (*quoting Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)). However, the *Stincer* Court "emphasized that this privilege of presence is not guaranteed 'when [a defendant's] presence would be useless, or the benefit but a shadow.'" *Id*. at 745 (citations omitted). The *Stincer* Court explained that "due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Id*. (citations omitted).

Howard has failed to identify any case law holding that a defendant has a right to be present at a resentencing hearing and this Court has failed to locate any authority suggesting such a rule. Here, the state appellate court found that no hearing was held and, in fact, no resentencing was actually authorized, as the trial court was simply instructed to correct Howard's sentence by deleting that portion relating to the conviction that was reversed. As such, the state appellate court upholding the procedure followed in amending the original sentence was neither contrary to nor an unreasonable application of clearly established federal law.

Further, assuming *arguendo* that the trial court violated Howard's due process rights by failing to hold a resentencing hearing in his presence, harmless error analysis would preclude

habeas relief. *See, e.g., Rushen v. Spain*, 464 U.S. 114, 118 (1983) (finding that while the right to personal presence at all critical stages of criminal proceedings is fundamental, the deprivation of such a right is subject to harmless error analysis); *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991) (finding that most constitutional errors are subject to a harmless error analysis); *Thomas v. Goldsmith*, 979 F.2d 746, 748 (9th Cir. 1992) (finding no due process violation where a petitioner failed to allege that his absence from a hearing actually prejudiced him and where the record did not reflect any prejudice). Here, Howard has failed to explain how his absence from the trial court's correction of his sentence prejudiced him. Because the trial court was authorized to take no other action than excising that portion of Howard's sentence relating to aggravated burglary, Howard could not conceivably have been prejudiced by his absence. Thus, ground two of Howard's habeas petition is without merit.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends Howard's Petition be GRANTED in part and DENIED in part. Howard's due process claim and ineffective assistance of appellate counsel claim for failing to raise retroactive misjoinder should be denied. With respect to Howard's ineffective assistance of appellate counsel claim for failing to raise a sentencing violation, it is recommended that Howard's petition for a writ of habeas corpus be conditionally GRANTED and that Howard be released from state custody within ninety (90) days from the time the Court's decision becomes final unless the state permits Howard to initiate and prosecute a direct appeal regarding that portion of his final sentence that imposes five years of post-release control.

s/ Greg White<br>U.S. MAGISTRATE JUDGE

Date: October 8, 2008

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**